# CASES

ARGUED AND DETERMINED IN THE

# SUPREME COURT

OF

# NORTH CAROLINA

AT

# RALEIGH

## SPRING TERM, 1967

NORTH CAROLINA STATE HIGHWAY COMMISSION v. ARNOLD H. NUCKLES AND WIFE, ELSIE P. NUCKLES; R. D. DOUGLAS, JR., TRUSTEE; HOME FEDERAL SAVINGS AND LOAN ASSOCIATION; GEORGE W. GORDON, TRUSTEE FOR JULIUS M. OZMENT AND WIFE, CLARA C. OZMENT; JULIUS M. OZMENT AND WIFE, CLARA C. OZMENT; GEORGE W. GORDON, TRUSTEE FOR H. L. WELBORN; H. L. WELBORN; THE TEXAS COMPANY, A CORPORATION; AMERICAN COMMERCIAL BANK; AND ROY M. BOOTH, TRUSTEE.

(Filed 24 July, 1967.)

**1. Constitutional Law § 24; Eminent Domain § 7d—**

The provision of G.S. 136-108 that in condemnation proceedings all questions raised by the pleadings as to parties, title, estates condemned, and area taken, should be determined by the court without a jury, reserving only the amount of damages for the determination of the jury, is constitutional, the adjudication by the court of such questions being conclusively solely for the purpose of condemnation.

**2. Same; Appeal and Error § 6—**

The right of appeal in condemnation proceedings is the same as in any other civil action, G.S. 136-119, and appeal lies in such proceedings from a final judgment and also from an interlocutory order which affects a substantial right and which would result in injury if not corrected before final judgment, G.S. 1-277.

**3. Same—**

When an interlocutory order in condemnation proceedings adjudicates that respondents own the land involved in the proceeding, the Highway Commission must appeal immediately if it wishes to litigate its contention that it had acquired in prior proceedings practically all the land in question, since trial of the issue of damages would be a futile thing if respondents did not own the land.

**4. Judgments § 28;   Courts § 9;   Eminent Domain § 7d—**

Order in condemnation proceedings adjudicating respondents' title to virtually all of the land in dispute in the proceedings, and adjudicating that the Highway Commission had not obtained any right thereto in prior condemnation proceedings, *held* a final adjudication as to such title, and in the subsequent proceedings another judge of the Superior Court may not modify, reverse or set aside such order.

**5. Appeal and Error § 57—**

The court's findings of fact are conclusive when supported by competent evidence even though there also be evidence which would support a contrary finding.

**6. Eminent Domain § 7d;   Pleadings § 24;   Limitation of Actions § 16—**

G.S. 136-19 is a statute of limitations and not a condition precedent, and the trial court's discretionary action in refusing to permit the Highway Commission to amend to plead the statutory limitation a year and a half after the original pleadings had been filed is not reviewable in the absence of a showing of abuse. Whether G.S. 47-27 applied to the Highway Commission prior to the 1959 amendment, and the sufficiency of the descriptions in recorded instruments purporting to convey easements and rights of way, *quære?*

**7. Eminent Domain § 7d—**

Where, in condemnation proceedings, the court has adjudicated that the Highway Commission did not obtain a right of way over the land in question by prior condemnation proceedings, it is prejudicial error for the court, in the subsequent trial of the issue of damages, to permit, over respondents' objection, the introduction of testimony in support of the Highway Commission's contention that it had acquired the land in the prior condemnation proceedings and to submit such contention to the jury in the court's charge.

**8. Eminent Domain § 6—**

Testimony as to the price paid by respondents for the tract of land some four years prior to the condemnation of a part of the tract is properly admitted upon the question of the amount of damages when there is no suggestion of any physical change in the tract or any substantial change in the vicinity of the property which might have affected its value from the time of the purchase by plaintiffs to the time of condemnation.

**9. Eminent Domain § 2;   Appeal and Error § 25—**

Where the owners are afforded direct access from their land to a service road connected with the lanes of travel for one direction on a limited access highway, with crossover points to the lanes of travel in the other direction, the owners are not entitled to compensation for mere inconvenience as distinguished from denial of access, and therefore an instruction leaving it to the jury to say whether, under the circumstances, respondents had reasonable access to the highway, and authorizing the assessment of damages for loss of access if the jury should find that they did not have reasonable access, cannot be prejudicial to them.

**10. Appeal and Error § 50—**

Instructions to the jury, even though technically erroneous, will not warrant a new trial when such instructions could not have adversely affected the verdict.

APPEAL by plaintiff from judgment entered by *McLaughlin, J.,* on 27 May 1965, and by defendants Arnold H. Nuckles and wife from *McConnell, J.,* 7 March 1966 Regular Civil Session of GUIL-FORD (Greensboro Division). Both appeals were docketed and argued at the Fall Term as Case No. 693.

Condemnation proceedings under G.S. 136-19 and G.S. 136-103 *et seq.* instituted by plaintiff on 18 April 1961 to condemn a right-of-way over defendants' property for Project No. 8.15364 — the improvement of U. S. Highway No. 29 (No. 29) from Greensboro to the Rockingham County line. Defendants' property is located at the intersection of No. 29 and McKnight Mill Road. It is partly within and partly without the northern city limits of Greensboro.

These facts are stipulated or uncontroverted: During 1948 and 1949, as Project 53-54 (grading, completed 20 May 1948) and Project 53-55 (paving, completed 31 May 1949), plaintiff constructed 10¼ miles of No. 29 and assumed the maintenance of it on 16 January 1950. The paved portion of the highway was 24 feet wide, and it then carried two-way traffic. That portion is now the lane for south-bound traffic only. This construction went diagonally through a rectangularly-shaped tract of land belonging to defendants. The west line of this tract (1,399 feet) was Spring Street; the south line (390 feet), McKnight Mill Road. No. 29 had not previously crossed this land. Under Project 8.15364 (hereinafter referred to as Project No. 2), plaintiff constructed the northbound lane of No. 29, together with grade separations, service, and access roads, and this section of No. 29 became "a controlled access facility." G.S. 136-89.49(2). The northbound lane, last constructed, is located 30 feet east of the southbound lane. In 1950, Projects 53-54 and 53-55 (Projects 54 & 55) affected only defendants' rectangular tract described above. In 1961, Project No. 2 affected two additional tracts (tracts 3 and 4) belonging to defendants. Reference is made to the illustrative map incorporated in this opinion.

No. 29 divides the rectangular tract into two parts: a 6.96-acre tract on the west side of the highway and a 1.32-acre tract on the east side. A third tract, to which defendants obtained a deed 2 January 1957, is located entirely within the *present* right-of-way of No. 29. Tract 3 is a rectangle 100' x 250', containing .57 acre. Tract 4, located on the north side of No. 29, and on which is situated a filling station, contains .95 acre. It is a triangle bounded on the

HIGHWAY COMMISSION *v.* NUCKLES.

east by No. 29 (407 feet), and on the north by the McKnight Mill Road (240 feet). Its third side is 361.28 feet in length. Defendants acquired tract 4 in November 1947. Plaintiff has taken no part of this tract; only its access to No. 29 has been affected.

McKnight Mill Road no longer crosses No. 29. From the east, it affords access to the northbound lane of No. 29, to the service road into defendants' 1.32-acre tract, and to a two-way service road to the south. From the west, it now affords access only to the southbound lane of No. 29 and to the two-way service road which parallels that lane and the east property lines of defendants' tract 4 and the 6.96-acre tract. This service road extends from McKnight Mill Road south about one-fourth mile to the access to Cone Boulevard. The record does not disclose the distance it extends north from the intersection. Access to the main-traveled lanes of No. 29 from service roads is only at designated points, shown as "C/A" on the map.

When plaintiff instituted this proceeding, it paid into court, under provisions of G.S. 136-103, $31,709.00 as its estimate of just compensation for the land it purported to be taking under Project No. 2. The complaint and declaration of taking stated that Exhibit B, attached to the complaint, contained the description of the property being condemned. Exhibit B was a series of four very small maps showing the property of numerous persons. Except, perhaps, to a highway engineer "in the know," Exhibit B was totally unintelligible as a description of the property being taken. Upon defendants' motion, on 29 July 1963, Judge Crissman entered an order directing that defendants' property be considered as four separate tracts, designated as tracts 1, 2, 3 and 4 on the map. He also ordered plaintiff to file (1) a detailed description of the land and all property rights it purported to take in this proceeding; (2) a description of the access provided to each of defendants' tracts; and (3) a description by metes and bounds of any rights-of-way it claimed to have previously acquired over defendants' property.

Plaintiff's bill of particulars, prepared on 20 September 1963, disclosed: The lands which plaintiff sought to condemn in this proceeding were tracts A and B as shown on the map. Tract A is a triangle with a curved base, containing .02 acre. One side of it (51.03 feet) is the eastern line of No. 29; another, the northern line of the McKnight Mill Road (51.03 feet); and the third is an arc of 62.36 feet connecting the other two. Tract A was formerly the southwest corner of defendants' present 1.32-acre tract. Tract B, the southeastern corner of defendants' tract 3, is also a triangle. It contains .01 acre. One side of it (51.47 feet) is the east line of No. 29; the other two sides are 45.53 feet and 24.02 feet respectively.

Since the completion of both lanes of No. 29, the 6.96-acre tract

has no direct access to either the northbound or southbound lanes of No. 29, but it has access to the southbound lane of No. 29 and to McKnight Mill Road West by means of the service road constructed parallel to the southbound lane. The 1.32-acre tract has direct access to McKnight Mill Road East, its south boundary, and to the northbound lane of No. 29 by way of McKnight Mill Road. This tract, of course, has no direct access to the southbound lane. (A service road from the McKnight Mill Road intersection extends approximately 320 feet into this tract, parallel with the northbound lane of No. 29.) Tract 4 has no direct access to the northbound lane of No. 29. It has direct access to the southbound lane, and southbound traffic has direct access to it.

Plaintiff claims as an existing easement (acquired during construction of Projects 54 & 55) all that portion of defendants' large, rectangular tract which is now covered by the 250-foot wide right-of-way for No. 29, north of the McKnight Mill Road. This right-of-way is shown on the map as the two shaded areas within the figures 1-2-3-4-5 which are separated by the 24-foot southbound lane of No. 29. (The shaded area of tract 1 contains 1.58 acres; tract 2, 2.17 acres.)

Defendants, by answer, denied that plaintiff, prior to the commencement of this action, had any existing right-of-way over any of their property. They averred that plaintiff had never paid them any compensation for a right-of-way or for any previous taking, and denied that $31,709.00 was just compensation for the property which plaintiff had appropriated. After the pleadings and the bill of particulars were filed, it was apparent that an issue of title as to the easement claimed by plaintiff had been raised. On 27 March 1964, Judge Armstrong entered an order that all issues of title be determined by the court before issues of damages were submitted to the jury. G.S. 136-108. For this purpose, the case came on for hearing before Judge McLaughlin at the January 1965 Term. At this hearing, it was stipulated, *inter alia* (enumeration ours):

(1) The Nuckles property consisted of the rectangular lot and tracts 3 and 4.

(2) Defendants have never conveyed to plaintiff any right-of-way whatever over their lands for either of the two projects, and plaintiff has paid no money to defendants for any land which it has taken from them for highway purposes.

(3) Maps of Project 53-54 were posted at the Guilford County Courthouse in Greensboro on 31 March 1947.

(4) Plaintiff has taken no land from tract 4. If there has

been a taking with respect to this tract, it is a taking of access rights only.

(5) During construction under Projects 54 & 55, and before their completion, defendants built on that portion of their large, rectangular lot which is located east of the present southbound lane of No. 29 and north of the McKnight Mill Road, a building used as a restaurant known as Nuckles Barbecue. The greater portion of this building was on the 1.32-acre tract, but a portion of it was on the tract 2 right-of-way, which plaintiff claims it had then appropriated.

At the hearing on issues other than damages before McLaughlin, J., plaintiff offered evidence tending to show: When Projects 54 & 55 were completed, the State claimed a right-of-way 250 feet wide across defendants' large, rectangular tract, i. e., the shaded areas (tracts 1 and 2) and the southbound lane dividing them. Right-of-way signs were posted, and the right-of-way was marked with concrete markers, six inches square, which protruded six inches above the ground. There was one such marker, at least, on defendants' property in October 1960, but when it was put there, plaintiff's witnesses could not say. Mr. Nuckles knew that plaintiff claimed a 250-foot right-of-way because its agents had explained this to him. As late as 1955, one had unsuccessfully attempted to settle with him for the right-of-way for the sum of $1,000.00. In February 1955, plaintiff informed Mr. Nuckles that federal funds were being held up on Projects 54 & 55 because he had a sign on the right-of-way. At its request, he moved the sign. Until construction began under Project No. 2, traffic headed both north and south on No. 29 had direct access to the restaurant. Northbound traffic can still turn directly into the restaurant by way of the McKnight Mill Road intersection, but traffic passing it on the southbound lane must continue south for one-half mile to Cone Boulevard, turn east on Cone to the northbound lane or to the service road which parallels that lane, and then back to McKnight Mill Road, a distance of about 1¼ miles. To leave the restaurant and go south, one would go north on No. 29 about 3/10 of a mile to a crossover.

In 1949, defendants gave Duke Power Company a right-of-way over their property on the east side of No. 29. It provided: "Power line shall be located approximately one foot off highway right-of-way." Prior to the commencement of Project No. 2, power poles were located on defendants' property on the west side of the southbound lane 87 feet from the west edge of the pavement; on the east side, they were 141 feet from the east edge of the southbound lane.

Defendants' evidence tended to show: After the construction of

the first lane of No. 29, they operated the. barbecue restaurant and a mobile home sales lot on their property east of the pavement. They paved, graveled, and landscaped the land between the traveled portion of the highway and the restaurant. They used this area for parking, and maintained it exclusively. They also constructed two drives directly connecting the restaurant with No. 29 and another connecting it with McKnight Mill Road. Lights on white columns, 15-20 feet from the pavement, illuminated the drives. No right-of-way markers or signs were ever placed on their property until after the completion of Project No. 2. When plaintiff asked defendants to move their neon sign so that it might obtain federal funds, defendants, under the impression that the request had reference to a right-of-way for Project No. 2, moved it solely as a matter of accommodation. Defendants used their property on the west side of No. 29 as a residential mobile home park and maintained it "right up to the ditch-edge of the paved street." They graded down a bank 15-20 feet from the pavement and made a drive. It was not until 1961 that they "became familiar with the extent of the right-of-way on this' last project."

The foregoing evidence pertained only to tracts 1 and 2. As the basis of its claim to a right-of-way over tract 3, plaintiff introduced the following document, which has never been recorded:

STATE OF NORTH CAROLINA       PROJECT   5354

COUNTY OF Guilford       SURVEY LINE

### RIGHT OF WAY AGREEMENT

Jay Duggins and wife Nellie E. Duggins
Rt. # 5, Box # 360, Greensboro, N. C.     , the undersigned property owner on State Highway Project 5354, recognizing the benefits to the said property by reason of the proposed highway development in accordance with the survey and plans proposed for the said project and in consideration of the early construction of the said project, hereby releases and relinquishes the State Highway and Public Works Commission from all claims for damage by reason of the right of way for the said project across the lands of the undersigned and the past and future use thereof by the State Highway and Public Works Commission, its successors and assigns, for all purposes for which the State Highway and Public Works Commission is authorized by law to subject such right of way; said right of way being the

width indicated and between the approximate survey stations as follows:

| LEFT OF SURVEY CENTER LINE | RIGHT OF SURVEY CENTER LINE |
|---|---|
| Station          Station | Station          Station |
| 125.0 ft. wide 116÷10 and 118+05 | 125.0 ft. wide 116+10 and 118+05 |

as shown in said survey, subject to the following provisions only:

The State Highway Commission will purchase lot size 100′ x 320′ from L. E. Sikes and same to be deeded to the undersigned. Also move dwelling and garage onto new lot and provide new well. Six pieces of shrubbery to be moved over to new lot, also privy.

It is understood that construction of this project may be delayed on account of the present war emergency and any obligation assumed by the State Highway and Public Works Commission will not accrue until the construction of the project is actually begun.

There are no conditions to this agreement not expressed herein.

IN WITNESS WHEREOF I have hereunto set my hand and affixed my seal, this the __1__ day of ____April____ , 1946 .

WITNESS:

| M. T. Adkins | J. Duggins | (SEAL) |
|---|---|---|
| M. T. Adkins | Nellie E. Duggins | (SEAL) |

At the conclusion of the evidence before Judge McLaughlin, plaintiff's counsel moved that the Highway Commission be allowed to amend its complaint, or to file a reply, in order to plead the statute of limitations, G.S. 136-19 as it appears in Vol. 3B, N. C. Gen. Stat. (1958 repl.), in bar of any claim by defendants for compensation for the 250-foot right-of-way allegedly taken under Projects 54 & 55. Judge McLaughlin denied this motion, and plaintiff excepted.

Thereafter, the judge found facts in accordance with the stipula-

tions and the recitals heretofore made in this statement of facts. In addition, he found (enumeration ours):

1.    Defendants used the building which housed Nuckles Barbecue until it was removed subsequent to April 1961 during the construction of Project No. 2.

2.    From 1950 until Project No. 2 was begun in 1961, on both sides of No. 29, defendants used and maintained their property adjoining the paved highway and paid taxes on the property plaintiff claimed as a right-of-way.

3.    Upon the completion of Projects 54 & 55, some concrete markers and right-of-way signs were installed along the right-of-way, but none were placed on defendants' property. Signs were placed at each end of the project.

4.    That portion of plaintiff's alleged right-of-way lying west of the 24-foot lane first paved is 86 feet wide; that portion lying east of it is 140 feet wide.

Upon the facts found, the judge concluded as a matter of law, *inter alia* (enumeration ours):

1.    Plaintiff, by paving a roadway 24 feet wide across defendants' large, rectangular tract during the construction of Projects 54 & 55, acquired a 24-foot easement over the land occupied by the paved strip. Defendants are not entitled to recover any compensation for this 24-foot wide easement.

2.    Plaintiff did not take or occupy any other property of defendants in such a manner as to constitute an appropriation, and defendants had no actual or constructive notice of any taking of their land adjacent to the paved portion of the highway.

3.    Upon the institution of this action on 18 April 1961, plaintiff acquired a right-of-way easement for the 250-foot right-of-way as shown on the map. It also acquired the two small, triangular tracts designated as lots A and B, shown as hatched areas on the map. In addition, plaintiff acquired the right to exclude direct access to U. S. Highway 29 from defendants' 6.96-acre tract, the 1.32-acre tract, and tract 4, the .95-acre tract.

He thereupon adjudged that defendants were entitled "to just compensation for all the areas of their property" taken and designated on the map as tracts A, B, 1, 2, and all of 3, except that portion embraced by the 24-foot paved southbound lane, and that just compensation should include any damages resulting to the 6.96-acre tract, the 1.32-acre tract and tract 4 from loss of access to U. S. Highway 29. He directed that tract 1 should be considered a part

of defendants' 6.96-acre tract and tract 2, a part of the 1.32-acre tract.

Defendants took no exception to Judge McLaughlin's order.

Plaintiff excepted to each of the court's findings of fact and each conclusion of law except those relating to defendants' ownership of the land involved, but gave no notice of appeal. Plaintiff also excepted to the court's final adjudication as to defendants' rights to compensation.

Upon the trial of the issues of damages before Judge McConnell at the 3 March 1966 Session, defendants offered evidence which tended to show that the difference in the value of tract 1 immediately before and after the taking on 18 April 1961 was from $32,915.00 to $19,740.00; that the difference in value of tract 2 was from $78,310.00 to $21,700.00; that the difference in the value of tract 4 ranged from $24,415.00 to $15,000.00. With reference to tract 4, their evidence tended to show that it is leased to the Texas Company, which has erected a service station thereon; that, at the time of the trial, this lease had "eleven more years to go" but that after the expiration of the lease, tract 4 had very little value for commercial purposes. All of defendants' witnesses fixed the value of tract 3, before it was taken for the right-of-way, at $10,000.00.

Over defendants' objection and exception, on cross examination, five of their witnesses were asked, and required to answer, questions substantially as follows: "If the State Highway Commission had a right-of-way agreement granting it a 250-foot right-of-way which took all of tract 3 except tract B as shown by the map, would that, in your opinion, reduce the value of tract 3?" Each witness indicated that the value of the tract would be reduced, but all were reluctant "to put a value on a piece of land that the highway owned." One suggested that, encumbered by the right-of-way, the lot had no sale value. Defendants objected to these questions on the ground that whether plaintiff had acquired a right-of-way before the institution of this action was not an issue in the trial; that Judge McLaughlin's order had adjudicated that plaintiff had no right-of-way over tract 3 except the paved southbound lane of No. 29.

With reference to tract 3, Mr. Nuckles testified that when he bought it from J. Duggins and wife on 2 January 1957, at a figure which he could not remember, Mr. Duggins told him he owned the lot. Upon cross-examination, Mrs. Nuckles was asked if she knew how much her husband had paid for tract 3. Over defendants' objection and exception, she was required to answer. Her answer was: "We paid $50.00 for it. . . . In 1957 we checked the title to that property, and there was no recorded encumbrance against tract 3."

Plaintiff offered the testimony of one real estate appraiser, Mr.

H. D. Jones of Winston-Salem, which tended to show that the difference in the value of tract 1 immediately before and after the taking on 18 April 1961 was $10,342.00; the difference in the value of tract 2, $27,320.00; that the value of tract 3 without the 250-foot right-of-way was $10,000.00. Over defendants' objection and exception, Mr. Jones was permitted to testify that with the right-of-way the value of tract 3 was $394.00, since tract B "was just large enough to put a couple of signs on it." As a witness for plaintiff, J. Duggins testified, over defendants' objection, that he signed plaintiff's Exhibit 9 (introduced in evidence at the trial as plaintiff's Exhibit No. 1) upon its promise to purchase a certain lot and to move his house, garage, and shrubbery to that lot. After the move was made, Mr. Nuckles told Duggins that he wanted to buy what was left of lot 3 so that he could "put a signboard up there," and he sold it to him for $50.00. Over defendants' objection, John B. Fox, a building inspector supervisor for the city of Greensboro, was permitted to testify that prior to 18 April 1961, plaintiff claimed a right-of-way 250 feet wide along No. 29 as it intersects with McKnight Mill Road in Greensboro.

Issues were submitted to the jury and answered as follows:

"1.   What sum are the defendants entitled to recover of the plaintiff, State Highway Commission, as just compensation for the appropriation of their property for highway purposes?
"(A)   For tract No. 1.   ANSWER:   $15,000.00.
"(B)   For tract No. 2.   ANSWER:   $28,000.00.
"(C)   For tract No. 3.   ANSWER:   $394.00.
"(D)   For tract No. 4.   ANSWER:   NONE."

Judgment establishing plaintiff's right-of-way and defendants' right to compensation was entered upon the verdict. Plaintiff and defendants appealed.

*T. W. Bruton, Attorney General; Harrison Lewis, Deputy Attorney General; T. Buie Costen, Staff Attorney; Eugene Shaw, Jr., Associate Counsel, for plaintiff.*

*Thomas Turner; Seymour, Rollins & Rollins for Arnold H. Nuckles and wife, Elsie P. Nuckles, defendants.*

SHARP, J.

PLAINTIFF'S APPEAL.

After the complaint, answer, bill of particulars, and plat were filed, it was revealed that, as to each of defendants' four tracts of land, there were two basic issues: (1) What land and appurtenances

thereto, if any, was plaintiff taking in this action, and (2) what was just compensation for the property taken. With reference to (1), G.S. 136-108 provides:

"Determination of issues other than damages. — After the filing of the plat, the judge, upon motion and ten (10) days' notice by either the Highway Commission or the owner, shall, either in or out of term, hear and determine any and all issues raised by the pleadings other than the issue of damages, including, but not limited to, if controverted, questions of necessary and proper parties, title to the land, interest taken, and area taken."

Defendants moved, under G.S. 136-108, that the judge determine question (1), and, on 27 May 1965, Judge McLaughlin made that determination. He adjudged that plaintiff was taking from tracts 1 and 2 the shaded areas shown on the map; tract A; and all of tract 3 (including tract B), except that portion covered by the paved southbound lane of No. 29, which is shown in white on the map. Judge McLaughlin had the authority to determine these issues. *Kaperonis v. Highway Commission,* 260 N.C. 587, 133 S.E. 2d 464. In addition to just compensation for the taking of these tracts, he decreed the defendants were entitled to any damages which had resulted to tract 4 from loss of access to U. S. 29.

Plaintiff's appeal and assignments of error relate only to Judge McLaughlin's findings of fact and conclusions of law as contained in his order determining issues other than damages. G.S. 136-119 provides that, when the State Highway Commission condemns property under Article 9, Chapter 136 of the General Statutes of North Carolina, either party in the proceeding "shall have a right of appeal to the Supreme Court for errors of law committed in any (of the) proceedings in the same manner as in any other civil actions. . . ." Appeals in civil actions are governed by G.S. 1-277, which permits an appeal from every judicial order involving a matter of law which affects a substantial right. Ordinarily, an appeal lies only from a final judgment, but an interlocutory order which will work injury if not corrected before final judgment is appealable. *Steele v. Hauling Co.,* 260 N.C. 486, 133 S.E. 2d 197. "(A) decision which disposes not of the whole but merely of a separate and distinct branch of the subject matter in litigation" is final in nature and is immediately appealable. 4 Am. Jur. 2d, Appeal and Error § 53 (1962).

Judge McLaughlin's order established that, before the institution of this action, the only right-of-way which plaintiff had over defendants' land was the 24-foot lane of No. 29, which was paved in

1949. It, therefore, affected plaintiff's substantial rights. After it was filed, Judge McLaughlin's adjudication became the law of the case until reversed on appeal. It was immediately appealable, and — if plaintiff was unwilling to abide by it — plaintiff was required to give timely notice of appeal and to docket its appeal by 10:00 a.m. on Tuesday 26 October 1965. Rules of Practice in the Supreme Court of North Carolina, 5 and 17. Instead, plaintiff proceeded to trial upon the issue of damages and docketed its appeal with that of defendants at the Fall Term 1966.

Immediate appeal was the procedure followed in *Johnson v. Highway Commission,* 259 N.C. 371, 130 S.E. 2d 544, a case involving a situation similar to this one. In *Johnson,* plaintiff landowners sued the Highway Commission for damages for an alleged taking of their property in relocating a highway. By answer, the State Highway Commission alleged, as here, that it owned a previously existing right-of-way over plaintiffs' property and that it was taking only an additional .15 acre. After a hearing under G.S. 136-108, the court adjudged that .15 acre was all the additional land the Highway Commission was taking in the relocation project. Upon plaintiffs' appeal, we found error and remanded the case with no question raised as to his right of immediate appeal. In *Highway Commission v. Farmers Market,* 263 N.C. 622, 139 S.E. 2d 904, the landowner appealed from an adjudication made under G.S. 136-108 that it was entitled to compensation only for land taken and that its loss of access to U. S. Highway 1-A was not compensable. The court, noting that the question whether the appeal was premature had not been raised, reversed the ruling that defendant was not entitled to damage for its loss of access, and remanded the case for the assessment of all damages.

One of the purposes of G.S. 136-108 is to eliminate from the jury trial any question as to what land the State Highway Commission is condemning and any question as to its title. Therefore, should there be a fundamental error in the judgment resolving these vital preliminary issues, ordinary prudence requires an immediate appeal, for that is the proper method to obtain relief from legal errors. G.S. 1-277. It may not be obtained by application to another Superior Court judge. A judgment entered by one Superior Court judge may not be modified, reversed, or set aside by another. *Nowell v. Neal,* 249 N.C. 516, 107 S.E. 2d 107.

Obviously, it would be an exercise in futility, completely thwarting the purpose of G.S. 136-108, to have the jury assess damages to tracts 1, 2, 3, and 4 if plaintiff were condemning only tracts A and B, and the verdict would be set aside on appeal for errors committed by the judge in determining the "issues other than damages." As

Bobbitt, J., said in *Light Company v. Creasman,* 262 N.C. 390, 397, 137 S.E. 2d 497, 502, "A controversy as to what land a condemnor is seeking to condemn has no place in a condemnation proceeding." For failure to perfect its appeal within the time required by our rules, plaintiff's appeal is dismissed.

In dismissing plaintiff's appeal, we deem the following comments pertinent: Notwithstanding evidence to the contrary, Judge McLaughlin's findings of fact were all supported by competent evidence. They are, therefore, conclusive on appeal. *Highway Com. v. Brann,* 243 N.C. 758, 92 S.E. 2d 146; McIntosh, North Carolina Practice and Procedure § 1782(6) (2d Ed., 1956). Furthermore, his findings support his legal conclusions. *Browning v. Highway Commission,* 263 N.C. 130, 139 S.E. 2d 227. The finding that under previous projects plaintiff had taken only the 24-foot strip which it had paved rendered a plea of the applicable statute of limitations (G.S. 136-19 as it read prior to 1 July 1960) immaterial, since defendants sought no compensation for the original 24-foot right-of-way. G.S. 136-19 was a statute of limitations "rather than a condition precedent." *Lewis v. Highway & Public Works Comm.,* 228 N.C. 618, 620, 46 S.E. 2d 705, 707. In all events, however, the judge's refusal to permit plaintiff to plead the statute a year and a half after the pleadings were filed was a matter entirely within his discretion and not reviewable. 3 Strong, N. C. Index, Pleadings § 24 (1960).

With reference to tracts 1 and 2, plaintiff's theory of this action seems to be this: In 1948-1949, under Projects 54 & 55, it had acquired a 250-foot right-of-way over defendants' rectangular tract even though it had paid them nothing. Because of the lapse of time, defendants could recover nothing from plaintiff for it in this action. Their only right to compensation was for the two small triangles A and B, worth (according to plaintiff's evidence at the trial) not over $788.00. Yet at the time of the institution of this action, plaintiff deposited in court as its estimate of just compensation $31,709.00!

The dismissal of plaintiff's appeal also makes it unnecessary to decide (1) whether G.S. 47-27 applied to the State Highway Commission prior to its 1 July 1959 amendment, or (2) — if it did — what the effect of Exhibit 9 would have been had it been recorded. G.S. 47-27 makes deeds and conveyances of easements and rights-of-way invalid as to creditors and purchasers for value prior to recordation. The amendment involved makes this section expressly applicable to the Highway Commission. The first question was debated in the briefs. Plaintiff contends that before 1 July 1959 it was not required to register any deed or agreement for a right-of-way or easement. Defendants contend that, by the amendment, the legislature merely made explicit that which was already implicit in the

statute and was attempting to force the Highway Commission to comply with the registration laws. They also point out that land titles would have been in an uncertain state, and the public policy with reference to registration frustrated, if the State and all its agencies were not required to record the conveyances under which they claim title to an interest in land. Plaintiff cites *Browning v. Highway Commission, supra; Kaperonis v. Highway Commission, supra; Yancey v. Highway Commission,* 222 N.C. 106, 22 S.E. 2d 256. Defendants cite, *inter alia, Williams v. Board of Education,* 266 N.C. 761, 147 S.E. 2d 381; *Best v. Utley,* 189 N.C. 356, 127 S.E. 337; *Collins v. Davis,* 132 N.C. 106, 43 S.E. 579. Suffice it to say, no decision determinative of the question has been called to our attention. See also *Bailey v. Highway Com.,* 230 N.C. 116, 52 S.E. 2d 276.

### DEFENDANTS' APPEAL.

Notwithstanding Judge McLaughlin's adjudication in May 1965 that defendants owned tract 3 free and clear of any right-of-way except the 24-foot paved southbound lane of No. 29, at the trial in March 1966, Judge McConnell, over defendants' objections: (1) permitted plaintiff's witness Fox to testify that plaintiff claimed a 250-foot right-of-way over the property (defendants' assignment of error 17); (2) permitted J. Duggins, defendants' grantor, to testify that he had signed plaintiff's Exhibit 9 in order to give plaintiff a right-of-way over tract 3 and to get his house moved therefrom to another lot, which plaintiff was to purchase for him; and that he had thereafter sold defendants "what was left" of tract 3 (only tract B, according to plaintiff's contentions) (assignment of error 14); (3) required five of defendants' witnesses on cross-examination to reply to a hypothetical question, the answer to which was that *if* plaintiff did have a 250-foot right-of-way across tract 3, which left only tract B unencumbered, the value of tract 3 would not be $10,000.00 — the value which *all* the witnesses had placed upon tract 3 unencumbered (defendants' assignments of error 2, 4, 5, 7, 8, 9, 12); (4) permitted Mr. Jones to testify that, with the 250-foot right-of-way, Tract B was worth $394.00 (assignment of error 18). The effect of Mr. Jones' evidence is clearly reflected in the verdict. The jury awarded defendants $394.00 as just compensation for tract 3.

After admitting the evidence above referred to, Judge McConnell charged the jury:

"The State Highway contends they already had a right-of-way over Tract No. 3, having been assigned by Mr. Duggins. . . . The defendants contend that they took all of Tract No. 3, and the State contends that it took only a small portion, con-

taining approximately .01 of an acre or 675 square feet, which was a small triangular portion, as the State contends they took. . . . I instruct you that where only a part of a tract of land was taken, as in Tract 1, Tract 2, and Tract 3, after you consider that, taking into consideration the difference in the contentions of the parties, I instruct you that where only a portion of a tract of land is taken, the measure of damages for said taking shall be the difference between the fair market value of the entire tract immediately prior to the taking — and in this case, the land was appropriated April 18, 1961. . . . The question of the effect of the right-of-way is a question for you to determine. You have heard the evidence and the contentions of the parties, and it is a matter for you to determine where the truth lies."

In addition to the portion of the charge quoted above, in stating the contentions of the parties, the court elaborated further upon plaintiff's contention that it owned a 250-foot right-of-way across tract 3 at the time defendants acquired it. (Assignments of error 20 and 21 relate to the charge with reference to tract 3.)

In his rulings upon the admissibility of evidence and in his charge, Judge McConnell utterly disregarded Judge McLaughlin's adjudication that plaintiff had only a 24-foot right-of-way across tract 3 at the time defendants acquired it. Right or wrong, Judge McLaughlin's order was the law of the case, and Judge McConnell could neither ignore it nor change it. In no event, however, should it have been left to the jury to say whether plaintiff had a right-of-way over tract 3. The construction and effect of plaintiff's Exhibit 9, upon which plaintiff relied for its 250-foot right-of-way, was a legal question to be determined by the judge *before* submitting any issue of damages to the jury — and Judge McLaughlin had made that determination.

It is obvious that all controversy with reference to tract 3 could have been avoided had the Highway Commission done two things on 1 April 1946 when it completed its negotiations with the Duggins: (1) procured their signatures to a right-of-way agreement which conformed to rudimentary rules of conveyances and (2) then recorded it. *Borders v. Yarbrough,* 237 N.C. 540, 75 S.E. 2d 541. Exhibit 9, although labeled "Right of Way Agreement", merely releases plaintiff from all claims of damage by reason of a right-of-way for Project 53-54 across the lands of Duggins, the right-of-way being 125 feet on each side of the center line, "Station 116-+-10 and Station 118+05." The words of Denny, C.J., in *Browning v. Highway Commission, supra* at 134, 139 S.E. 2d at 229, are once again appropriate:

"The rather careless and haphazard manner in procuring rights of way, together with the lack of clarity and accurateness in the preparation of right of way agreements by the Commission through the years, has been a source of much litigation."

Defendants' objection to the question put to Mrs. Nuckles and to Mr. Duggins with reference to the purchase price which Mr. Nuckles paid Duggins for tract 3 was properly overruled. Nuckles purchased this tract on 2 January 1957; plaintiff condemned it on 18 April 1961, approximately four years later. "It is accepted law that when land is taken in the exercise of eminent domain it is competent, as evidence of market value, to show the price at which it was bought if the sale was voluntary and not too remote in point of time." *Palmer v. Highway Commission,* 195 N.C. 1, 2, 141 S.E. 338, 339. "The reasonableness of time is dependent upon the nature of the property, its location, and the surrounding circumstances, the criterion being whether the evidence fairly points to the value of the property at the time in question." *Highway Commission v. Coggins,* 262 N.C. 25, 29, 136 S.E. 2d 265, 267-68. In *Shopping Center v. Highway Commission,* 265 N.C. 209, 212, 143 S.E. 2d 244, 246, Moore, J., said:

"Some of the circumstances to be considered are the changes, if any, which have occurred between the time of purchase by condemnee and the time of taking by condemnor, including physical changes in the property taken, changes in its availability for valuable uses, and changes in the vicinity of the property which might have affected its value. The fact that some changes have taken place does not *per se* render the evidence incompetent. But if the changes have been so extensive that the purchase price does not reasonably point to, or furnish a fair criterion for determining, value at the time of taking, when purchase price is considered with other evidence affecting value, the evidence of purchase price should be excluded."

In this case, there is no suggestion that there has been any physical change in tract 3 or any substantial changes in the vicinity of the property which might have affected its value — except those resulting from the completion of Project No. 2. Therefore, the voluntary sale between Duggins and Nuckles was not too remote in point of time to be admissible. Defendants' reluctance to have the jury know that they seek to have the State pay them $10,000.00 for a tract of land which they purchased for $50.00 four years earlier is understandable. Notwithstanding, nothing appears which would render this evidence incompetent.

With reference to tracts 1, 2, and 4, defendants complain that the court failed to charge the jury correctly upon their right to compensation for the taking of, or injury to, the uncontrolled access which these tracts had to No. 29 prior to Project No. 2. When the charge is considered as a whole, the court instructed the jury substantially as follows:

The owner of property abutting a highway has a right in the street beyond that which is enjoyed by the general public, since egress and ingress to his property is a necessity peculiar to himself. His right of access is an easement appurtenant which cannot be taken from him without just compensation, but he has no right to insist that the entire volume of traffic which would naturally flow over a highway in which he owns the fee pass by undiverted. Therefore, defendants are not entitled to recover damages for the diversion and diminution of traffic by their property which resulted when the lane which had formerly carried two-way traffic was converted into a lane for southbound traffic only, *provided* direct access to the southbound lane is afforded them. If the Highway Commission takes away a landowner's direct access, as it has a right to do, he is entitled to recover the diminution in market value which results to his land from the taking. There has been no taking, however, if the Highway Commission affords him reasonable access to the highway. Mere inconvenience because the owner is compelled to use a longer and more circuitous route in reaching the highway is not compensable provided it gives him reasonable access. It is for the jury to determine whether or not plaintiff has provided defendants reasonable access to their remaining property, *i. e.*, tracts 1, 2, and 4. If plaintiff has not, defendants are entitled to reasonable compensation for that taking.

With reference to tract 1, the court instructed the jury that it could answer the issue in any amount it found to be fair and just compensation not to exceed $32,915.00; as to tract 2, any amount not to exceed $78,310.00; as to tract 4, any amounts from zero to $24,415.00. He summarized plaintiff's contentions in substance as follows:

(1)   Tract 4, because of its location in the southwest corner of the intersection of McKnight Mill Road and No. 29, and as a result of the service road which parallels its property line and the southbound lane of No. 29, has direct access to that lane in a manner which enables a motorist to drive directly into the service station and out again to continue his journey south. (2) Tract 1, by way of Spring Street and the two-way public service road, which parallels its eastern line and the southbound lane of No. 29, has direct access to both No. 29 and McKnight Mill Road on the south

and to the northbound lane of No. 29 by way of a crossover to the north. Used as a trailer park prior to the taking, it is still so used. (3) Tract 2 likewise has both direct and reasonable access to the northbound lane of No. 29, which it adjoined, by virtue of its location in the northeast corner of the intersection of McKnight Mill Road and No. 29. Defendants still operated Nuckles Barbecue on this tract, and their customers, traveling north on No. 29, had direct and immediate ingress and egress. It was only the loss of area which had caused defendants to terminate the trailer sales agency which they had formerly operated on tract 2.

The court summarized defendants' contentions as follows:

In addition to the acreage taken from both tracts 1 and 2, defendants had had to exchange unlimited and unrestricted access along the entire boundaries of their tracts 1, 2, and 4, which abutted No. 29, for restricted access at limited points designated by plaintiff. These points do not constitute "reasonable access."

Plaintiff took no property right from defendants when it separated the lanes for northbound and southbound traffic so that each of defendants' tracts had access to one lane only. *Moses v. Highway Commission*, 261 N.C. 316, 134 S.E. 2d 664; *Barnes v. Highway Commission*, 257 N.C. 507, 126 S.E. 2d 732. Defendants likewise had no vested interest in having McKnight Mill Road continue uninterruptedly across both lanes of No. 29. Plaintiff, therefore, took nothing from them when it gave McKnight Mill Road East access only to the northbound lanes of No. 29 and McKnight Mill Road West access only to the southbound lanes. *Wofford v. Highway Commission*, 263 N.C. 677, 140 S.E. 2d 376; *Snow v. Highway Commission*, 262 N.C. 169, 136 S.E. 2d 678.

With reference to access, G.S. 136-89.53 provides in pertinent part:

> "The Commission may designate and establish controlled-access highways as new and additional facilities or may designate and establish an existing street or highway as included within a controlled-access facility. When an existing street or highway shall be designated as and included within a controlled-access facility the owners of land abutting such existing street or highway shall be entitled to compensation for the taking of or injury to their easements of access."

This statute was applied in *Highway Commission v. Farmers Market, supra*. In that case, the construction of the Belt Line around Raleigh deprived Farmers Market of access to Race Track Road which had formerly been a portion of its northern boundary and had

given it access to U. S. Highway 1-A. The Highway Commission provided no service road. After the construction of the Belt Line, to obtain access to 1-A from the northern portion of its property (in effect, a separate tract from the southern portion), Farmers *itself* would have to construct a road 3,000 feet or more in length over a difficult terrain. The Court, citing G.S. 136-89.53, held that Farmers' access to 1-A had been substantially diminished and that it was entitled to compensation for the loss of its access to Race Track Road. Rodman, J., stated the rule as follows (citations omitted):

> "Repeated decisions by this Court have established the right of a property owner to reasonable access to a public highway which abutts his land. That is a property right which cannot be taken without compensating the owner. . . .
>
>     \*   \*   \*
>
> "While the abutting owner has a right of access, the manner in which that right may be exercised is not unlimited. . . . To protect others who may be using the highway, the sovereign may restrict the right of entrance to reasonable and proper points. . . .
>
> "If the abutting owner is afforded reasonable access, he is not entitled to compensation merely because of circuity of travel to reach a particular destination. . . ."

In *Moses v. Highway Commission, supra,* plaintiffs, who operated a motel, sought damages because they were denied immediate access from their property to Interstate Highway I-95, a controlled access road. Although plaintiffs had access by a service road which abutted their property and connected with points fixed for entrance and departure from the Interstate Highway, a motorist traveling south on the inner lane of I-95 traveled 1.65 miles farther to reach plaintiffs' motel than he would if allowed direct access to the property; one traveling north traveled .65 mile farther. In holding that plaintiffs were not entitled to compensation, this Court said:

> "If the denial of immediate access to the inner traffic lane is a taking of property compensation must be paid. . . . (B)ut if the substitution of a service road for the direct access theretofore enjoyed is an exercise of the police power, any diminution in the value of petitioners' property is *damnum absque injuria.*
> . . .
>
>     \*   \*   \*
>
> "Petitioners do not claim a denial of access; they merely assert access to a portion of the highway is less convenient now

than in 1957 when they acquired a right-of-way across land subsequently acquired by respondent. . . .

\* \* \*

"(A)n abutting property owner is not entitled to compensation because of the construction of a highway with different lanes for different kinds and directions of traffic, if he be afforded direct access by local traffic lanes to points designated for access to through traffic. . . .

"\* \* \* That access is provided by the service roads. These service roads are part of the highway system. They serve not only the petitioners but any member of the public who desires to use the same." *Id.* at 318, 320, 321.

In the *Farmers Market* case, where the landowner was held entitled to compensation for its loss of access, no service road was provided to give him access to the Belt Line which abutted his property. In the *Moses* case, in which a motel owner was denied compensation, access was provided by service roads. In the latter case, as in this case, the landowoners were "afforded direct access by local traffic lanes to points designated for access to through traffic."

In this case, the judge left it to the jury to say whether defendants had been afforded reasonable access to No. 29 and instructed them to award such damages as would make defendants whole if they had been deprived of it. They have no cause to complain of the charge with reference to access for it contains no error prejudicial to them. The judge should have charged the jury that, under the law, defendants' access to No. 29 had not been taken. In their brief, defendants request a new trial as to all four tracts, but we note that when they moved the court to set aside the verdict, they moved to set it aside only as to tracts 3 and 4.

Defendants' other assignments of error have all been considered — including the assignment relating to the charge on general benefits as affecting the measure of damages for tracts 1 and 2. Conceding that there was no evidence upon which to base a charge on general benefits and that, at best, it was an inadequate statement of the law relative to general benefits as an offset to damages, it is inconceivable to us that this portion of the charge adversely affected the verdict. A new trial will be granted only for errors which were prejudicial and harmful to appellant. 1 Strong, N. C. Index, Appeal and Error § 40 (1957).

The decision is this:

Plaintiff's appeal is

Dismissed.

Defendants' Appeal — as to tracts 1, 2, and 4, issues 1 (A), (B), and (D)

No error.

Defendants' appeal as to tract 3, issue 1 (C)

New trial.