DEPARTMENT OF TRANSPORTATION v. RAY HARKEY, JOHN REAVIS & CHARLES SULLIVAN, AS TRUSTEES OF SOUTHSIDE BAPTIST CHURCH

No. 314A82

(Filed 5 April 1983)

**Eminent Domain § 2.3— elimination of direct access to highway—compensation for a taking**

> The elimination of defendant property owners' direct access to an abutting highway is a taking under G.S. 136-89.53, entitling them to compensation for damages in a condemnation proceeding, when access to the highway remains available only via a series of residential streets.

> Justice FRYE did not participate in the consideration or decision of this case.

> Justice COPELAND dissents.

ON appeal pursuant to G.S. 7A-30(2) from a decision of the Court of Appeals, 57 N.C. App. 172, 290 S.E. 2d 773 (1982), with one judge dissenting, in which the judgment for plaintiff entered on 7 May 1981 in GUILFORD Superior Court by *Judge Robert A. Collier* was affirmed.

*Rufus L. Edmisten, Attorney General, by James B. Richmond, Special Deputy Attorney General, for plaintiff appellee.*

*Turner, Rollins, Rollins & Clark, by Clyde T. Rollins and Walter E. Clark, Jr., for defendant appellants.*

EXUM, Justice.

The sole question presented by this appeal is whether the elimination of defendant property owners' direct access to an abutting highway is a taking under G.S. 136-89.53, entitling them to compensation for damages in a condemnation proceeding, when access to the highway remains available via a series of residential streets. We conclude there has been a taking under well-established principles in this state, and the property owners are entitled to compensation for the loss of direct access.

Plaintiff filed its complaint pursuant to article nine of chapter 136 of the General Statutes of North Carolina to acquire fee simple title to a portion of property owned by defendants. Defendants are trustees of Southside Baptist Church, which is located on approximately 2.55 acres of land abutting Freeman Mill Road in Greensboro. The church's property actually abuts three streets—Freeman Mill Road on its front or western side, Corregidor Street on its northern side and Kindley Street on its southern line. The back or eastern boundary of the church is adjacent to residential property. The church currently has direct ingress and egress to all three roads on which it abuts.

Plaintiff plans to construct what will be known as United States Highway 220 on what is currently Freeman Mill Road. Plaintiff is taking an approximately one-quarter acre strip of land along the western line of defendants' property, including the entire length of the property abutting Freeman Mill Road, for a right of way. The new highway 220 will be a controlled-access facility, which is statutorily defined as a "highway, especially designed for through traffic, and over, from or to which highway owners or occupants of abutting property, or others, shall have only a controlled right of easement of access." G.S. 136-89.49. The new highway 220 will become a part of a full cloverleaf interchange with Interstate Highway 40 to the south of defendants' property. According to plaintiff's plan, the church property will have no direct access to the new highway once it is completed.

Furthermore, Kindley Street and Corregidor Street will be blocked so they will not provide access to the new highway, as they had done to Freeman Mill Road.

Plaintiff does not list in its complaint access as an interest taken by the construction of the new closed access facility. Rather, it asserts that although "[a]ccess [to the new highway] is controlled under the police power of the Department of Transportation . . . reasonable and adequate access [will be] provided by local traffic roads." The defendants contend all reasonable access has been taken by plaintiff and they are entitled to have a jury consider the loss of access as an element of damages in determining what compensation is owed defendants.

The evidence shows and the trial court found that after the highway project and improvements to certain streets are completed, defendants' remaining property will be afforded access to the new highway 220 via various paved streets in what is generally a residential area. Instead of having direct access to the abutting highway, drivers going from the church to the new highway must travel on one of several alternative routes along residential streets. Specifically, drivers leaving the church may choose one of four ways to reach Glenhaven Drive: (1) Corregidor Street to Cliffwood Drive (via an unnamed street yet to be constructed) to Glenhaven Drive; (2) Kindley Street to Glenhaven Drive; (3) Kindley Street to Monterey Street to Cliffwood Drive to Glenhaven Drive; or (4) Corregidor Street to Monterey Street to Cliffwood Drive to Glenhaven Drive. Once on Glenhaven Drive travellers will go to West Meadowview Drive, which they will take to Lovett Street. They will travel on Lovett Street until it intersects with the new highway 220, formerly Freeman Mill Road. Drivers going from the church to I-40 or other points to the south of the church will be required to go approximately one mile further after the new highway is completed. Instead of turning directly onto Freeman Mill Road (or the new highway 220) from the church property, they will have to take one of the routes set forth above to the Lovett Street intersection with the new highway and then essentially backtrack to where the church property abuts the new highway. Travelers going north from the church will not be required to travel a greater distance, but will be required to travel on a number of streets rather than just Freeman Mill Road (or the new highway).

The trial court found as a fact that the new highway will provide "less convenient" access than the church previously had to Freeman Mill Road. The court concluded, however, that "the defendants' remaining property abutting [the new highway] will have access thereto 'by way of the reasonable and adequate access provided by local traffic roads.'" Thus, the court apparently concluded that the elimination of direct access was a reasonable exercise of plaintiff's police power rather than a compensable taking under eminent domain. It concluded, therefore, that defendants were not entitled to have the jury instructed on loss of access as an element of damages.

The Court of Appeals affirmed, with the majority and dissenting opinions turning on their interpretations of this Court's opinion in *Dr. T. C. Smith Co., Inc. v. North Carolina State Highway Commission,* 279 N.C. 328, 182 S.E. 2d 383 (1971). We agree with defendants and the dissenter in the Court of Appeals that *Smith* controls this case. In order to understand some of the language in *Smith* and its holding, however, it is necessary to review the rules set forth in the cases upon which it relies.

An owner of land abutting a highway or street has the right of direct access from his property to the traffic lanes of the highway. This is "a right in the street beyond that which is enjoyed by the general public, or by himself as a member of the public, and different in kind, since egress from or ingress to his own property is a necessity peculiar to himself." *Sanders v. Town of Smithfield,* 221 N.C. 166, 170, 19 S.E. 2d 630, 633 (1942). "This right of access is an easement appurtenant which cannot be damaged or taken from him without compensation." *Snow v. North Carolina State Highway Commission,* 262 N.C. 169, 173, 136 S.E. 2d 678, 682 (1964); *see also, Dr. T. C. Smith Co., Inc. v. North Carolina State Highway Commission, supra,* 279 N.C. 328, 182 S.E. 2d 383; *State Highway Commission v. Raleigh Farmers Market, Inc.,* 263 N.C. 622, 139 S.E. 2d 904 (1965); *Moses v. Highway Commission,* 261 N.C. 316, 134 S.E. 2d 664, *cert. denied* 379 U.S. 930 (1964); *Abdalla v. State Highway Commission,* 261 N.C. 114, 134 S.E. 2d 81 (1964); *Hedrick v. Graham,* 245 N.C. 249, 96 S.E. 2d 129 (1957).* The right to compensation for the taking of

---

*Although North Carolina does not have an express provision in our constitution against the taking of private property without just compensation, it is a prohibition firmly imbedded in our law. As stated in *Long v. City of Charlotte*:

access by the state for a controlled-access facility is codified in G.S. 136-89.53:

The Department of Transportation may designate and establish controlled-access highways as new and additional facilities or may designate and establish an existing street or highway as included within a controlled-access facility. *When an existing street or highway shall be designated as and included within a controlled-access facility the owners of land abutting such existing street or highway shall be entitled to compensation for the taking of or injury to their easements of access.* [Emphasis added.]

But not all interferences with easements of access constitute a compensable taking pursuant to a state agency's power of eminent domain. In an early case involving a controlled-access highway, *Hedrick v. Graham, supra,* 245 N.C. at 255, 96 S.E. 2d at 133-34, this Court noted:

The most important private right involved in limited-access highway cases is the right of access to and from the highway by an abutting landowner. The basic problem in every case involving destruction or impairment of right of access is to reconcile the conflicting interests — *i.e.* private *versus* public rights. . . . Two methods are available for curtailing the right of access — the right of eminent domain and the police power.

The distinction between the police power and the power of eminent domain was explained in *Barnes v. North Carolina State Highway Commission,* 257 N.C. 507, 514-17, 126 S.E. 2d 732, 737-39 (1962):

We recognize the fundamental right to just compensation as so grounded in natural law and justice that it is part of the fundamental law of this State, and imposes upon a governmental agency taking private property for public use a correlative duty to make just compensation to the owner of the property taken. This principle is considered in North Carolina as an integral part of 'the law of the land' within the meaning of Article I, Section 19 of our State Constitution. The requirement that just compensation be paid for land taken for a public use is likewise guaranteed by the Fourteenth Amendment to the Federal Constitution.

306 N.C. 187, 196, 293 S.E. 2d 101, 107-08 (1982) (citations and footnotes omitted).

'The question of what constitutes a taking is often inter-woven with the question of whether a particular act is an ex-ercise of the police power or of the power of eminent domain. If the act is a proper exercise of the police power, the con-stitutional provision that private property shall not be taken for public use, unless compensation is máde, is not ap-plicable.' McQuillin, Municipal Corporations, Third Edition, Volume 11, § 32.27. 'The state must compensate for property rights taken by eminent domain; damages resulting from the exercise of police power are noncompensable.' *State v. Fox* [53 Wash. 2d 216], 332 P. 2d 943, 946 [1958]; *Walker v. State* [48 Wash. 2d 587], 295 P. 2d 328 [1956], and cases cited.

. . . .

As stated in *People v. Ayon* [54 Cal. 2d 217, 352 P. 2d 519, *cert. denied sub nom Yor-Way Markets v. California*, 364 U.S. 827 (1960)]: 'The compensable right of an abutting prop-erty owner is to direct access to the adjacent street and to the through traffic which passes along that street. (Citation.) If this basic right is not adversely affected, a public agency may enact and enforce reasonable and proper traffic regula-tions without the payment of compensation although such regulations may impede the convenience with which ingress and egress may thereafter be accomplished, and may necessitate circuity of travel to reach a given destination.'

Guided by these principles, our Court has determined certain reasonable restrictions on access to be proper exercises of the police power. Thus, in *Smith v. State Highway Commission*, 257 N.C. 410, 126 S.E. 2d 87 (1962), a change of grade in an existing highway which caused a diminution in the value of abutting prop-erty was held to be a proper exercise of the state's regulatory power and not a "taking" in the constitutional sense. In *Barnes v. North Carolina State Highway Commission, supra*, 257 N.C. at 518, 126 S.E. 2d at 741, the Court upheld the Highway Commis-sion's separation of the northbound and southbound traffic lanes so the plaintiff only had direct access to the southbound lanes of traffic. It held this was a permissible traffic regulation under the police power and did not entitle the plaintiff to damages. Further-more the plaintiff could recover damages for curbing constructed between the highway and his business establishments only if the

curbing substantially impaired "free and convenient access" to the improvements on his property. *Id.* at 517, 126 S.E. 2d at 740.

It is apparent from these cases that discussion of "reasonable access" and "circuity of travel" in connection with the highway department's liability is appropriate when access to and from a highway and its abutting property has been affected by some regulatory action under the police power afforded highway authorities. But where all direct access to a highway has been eliminated or substantially interfered with, causing diminution in value of an abutting property, the landowner is entitled to damages therefor. *State Highway Commission v. Raleigh Farmers Market, Inc., supra,* 263 N.C. 622, 139 S.E. 2d 904.

These principles guided this Court in *Dr. T. C. Smith Co., Inc. v. North Carolina State Highway Commission, supra,* 279 N.C. 328, 182 S.E. 2d 383. On facts very similar to those before us now, the Court determined the loss of direct access to be a compensable taking. *Id.* at 334-35, 182 S.E. 2d at 387.

The plaintiff in *Smith* owned a tract of land abutting Highway 191 and Wilmington Streets at a corner formed by two streets in Asheville. The plaintiff had developed the back portion of the property with warehouse, office and parking areas. Plaintiff had full right of access to Highway 191, although its driveway actually entered Wilmington Street and Highway 191 was reached via Wilmington Street. Pursuant to a highway project, Highway 191 was made a controlled-access facility and the plaintiff's access to Highway 191 was totally denied by the erection of a chain link fence. Wilmington Street was also dead-ended and blocked by the fence so the plaintiff no longer had access to Highway 191 via it. The plaintiff was given alternative access to Highway 191 through various public streets of Asheville which were constructed or improved as part of the project. Specifically, a person traveling from the plaintiff's property to Highway 191 would travel from Wilmington Street to Southwick Lane to Seven Oaks Drive to Westwood Place to Haywood Road to Highway 191. The Court expressly noted that no service or frontage road had been constructed to connect any part of the plaintiff's property with Highway 191. *Id.* at 329-30, 182 S.E. 2d at 384-85.

In analyzing the issue before it, the Court first cited numerous authorities for the proposition that a right of access is

an appurtenant easement which may not be taken or damaged by the state without just compensation. *Id.* at 332-34, 182 S.E. 2d at 386-87. It then stated: "If afforded reasonable access to the highway *on which his property abuts,* the owner is not entitled to compensation merely because of circuity of travel to reach a particular destination." *Id.* at 334, 182 S.E. 2d at 387 (emphasis original).

The Court of Appeals in the instant case viewed the quoted language as inconsistent with the holding in *Smith* that direct access has been denied when the only available access to the adjacent highway was "by circuitous travel over residential streets." 57 N.C. App. at 174, 290 S.E. 2d at 774 (quoting *Dr. T. C. Smith Co., Inc. v. North Carolina State Highway Commission, supra,* 279 N.C. at 334, 182 S.E. 2d at 387). It resolved what it viewed as an inconsistency by noting that the "main question in cases such as this one concerns the reasonableness of the substitute access provided." *Id.* at 174, 290 S.E. 2d at 774. For this statement the Court of Appeals relied on *North Carolina State Highway Commission v. Rankin,* 2 N.C. App. 452, 163 S.E. 2d 302 (1968), a service road case which, as we demonstrate below, involved the exercise of police power, not the power of eminent domain. But as we have shown above, it is established in this state by statute and case law, when all direct access has been eliminated, there has been *pro tanto* a taking; the availability and reasonableness of any other access goes to the question of damages and not to the question of liability for the denial of access. We conclude the statement in *Smith* that "reasonable access" precludes compensation had reference to the reasonable exercise of the state's police power, not its power of eminent domain.

We recognize that in both *Smith* and the instant case the highway authorities attempted to have their actions characterized as noncompensable exercises of the police power. The Court in *Smith* did not discuss the highway commission's position that the control of access was implemented under the police power. 279 N.C. at 331, 182 S.E. 2d at 386. It simply held that the elimination of direct access was a taking which entitled the landowner to just compensation under G.S. 136-89.53, without examining the reasonableness of the alternative access. *Id.* at 334, 182 S.E. 2d at 387. Thus, *Smith* stands for the principle that when all direct ac-

cess is taken no inquiry into the reasonableness of alternative access is required to determine liability.

In the instant case the state again asserted in defining the interest taken that "[a]ccess is controlled under the police power of the Department of Transportation . . . and there will be no access to, from, or across the [controlled-access lines] to the main traffic lanes, ramps, or approaches from the property abutting said highway right of way except *by way of the reasonable and adequate access provided by local traffic roads* as shown . . . ." (Emphasis added.) The italicized language was quoted by the trial court in his conclusion of law.

The language employed by the state and adopted by the trial court is not pertinent to the issue of liability for a taking under eminent domain. Apparently, transportation authorities have misinterpreted language used in a series of access cases arising in situations in which frontage roads provided access to the property from the abutting highway. In *Moses v. State Highway Commission, supra*, 261 N.C. 316, 134 S.E. 2d 664, the Court was presented with an access question arising when Highway 301 was converted to Interstate 95, a controlled-access highway. The highway had four lanes designated for through traffic which were separated by a fence from service roads. These service roads abutted the landowner's property and connected it with the "inner lanes" of traffic. *Id.* at 317, 134 S.E. 2d at 665. The Court defined the question before it in this manner:

> If the denial of immediate access to the inner traffic lane is a taking of property compensation must be paid; but if the substitution of a service road for the direct access theretofore enjoyed is an exercise of the police power, any diminution in the value of petitioners' property is *damnum absque injuria.*

*Id.* at 318, 134 S.E. 2d at 666 (citations omitted). After noting the landowners were not claiming a denial of access, just that it was less convenient, the Court concluded:

> [A]n abutting property owner is not entitled to compensation because of the construction of a highway with different lanes for different kinds and directions of traffic, if he be afforded *direct access by local traffic lanes* to points designated for access to through traffic.

*Id.* at 320, 134 S.E. 2d at 667-68 (emphasis added).

Thus the Court viewed the provision of a service road as an exercise of the police power and not a taking. It viewed a service road as just another lane of traffic in the highway system, regulated for use by local traffic and affording direct access between the through traffic lanes and the abutting property for members of the public and landowners alike. *Id.* at 321, 134 S.E. 2d at 668.

Subsequent cases have similarly viewed service or frontage roads running parallel to the highway as a part of the highway system that provides direct access for abutting property owners to the through traffic. *See, e.g., North Carolina State Highway Commission v. Rankin, supra,* 2 N.C. App. 452, 163 S.E. 2d 302. In *North Carolina State Highway Commission v. Nuckles,* 271 N.C. 1, 155 S.E. 2d 772 (1967), this Court again determined an abutting landowner was not entitled to compensation when his property was connected to a controlled-access highway via service roads which ran parallel to the main traffic lanes of the highway and were a part of the highway system. The trial court in *Nuckles* left it to the jury to determine if the landowners had been denied reasonable access. He instructed the jury that there is no taking if the landowner is afforded reasonable access to the highway. *Id.* at 19, 155 S.E. 2d at 787. This Court determined these instructions were erroneous because as a matter of law access has not been taken when landowners are "afforded direct access by local traffic lanes to points designated for access to through traffic." *Id.* at 22, 155 S.E. 2d at 789 (quoting *Moses v. State Highway Commission, supra,* 261 N.C. at 320, 134 S.E. 2d at 667-68).

The state attempted in *Smith* and the instant case to have the courts use the analysis developed for review of regulatory actions and employed in service or frontage road cases to determine liability for an elimination of direct access. The state specifically argues in its brief before us that "[s]ince the net result is the same, there is no reason not to apply the principles of the frontage road cases to other service road cases. The improvements to the street system which will connect the property of the Church to the travel lanes of Freeman Mill Road serve the same function that a frontage road would serve."

We believe this argument is without merit. While it is true that drivers on the new highway 220 will still have access to defendants' property via a number of city streets, that access is in no sense direct. Their access to the highway directly from the church property has been eliminated. In addition, no frontage or service road directly visible and accessible from the highway has been provided. Access is only available through a series of *local roads* which are part of the city street system, not *"local traffic lanes"* which are part of the new highway.

Furthermore, we do not believe that the net result is the same as if a frontage or service road had been provided, or that the frontage road principles should apply. As we have previously set forth, the frontage road cases are based on a police-power analysis and the determinative question is whether reasonable, direct access has been provided. But when there is no question that direct access has been taken and no frontage or service road has been provided, as in the case before us, eminent domain analysis is used. Under established precedent and G.S. 136-89.53, the elimination of direct access is a taking as a matter of law. Defendants are entitled to have the jury consider what damages are due for the diminution in value, if any, of defendants' property because of the loss of access. The availability of alternative access and its reasonableness would be appropriate considerations in awarding damages.

Finally, we are unable to distinguish *Smith* from the instant case, as did the Court of Appeals' majority, on the bases, first, that it involved commercial rather than church property, and second, that in the present case the state had "made a greater effort to provide adequate alternative access routes" than it had in *Smith.* 57 N.C. App. at 174, 290 S.E. 2d at 774. We do not believe the *Smith* opinion turned on the use of the property as a commercial enterprise. There is no intimation that the result would have been any different had the property been used for residential or institutional purposes. In short, we find no good reason in *Smith* itself, or in logic, for distinguishing between a church and a commercial establishment in determining liability of the state for taking an abutter's right of direct access. Nor are we able, as did the Court of Appeals, to distinguish the case on the basis that the Department of Transportation "has made a greater effort to provide adequate alternative access routes in this case than in

*Smith." Id.* In both cases no service or frontage road was provided, and in both cases the alternative access was provided by improvements made to various residential streets.

For the reasons stated, the decision of the Court of Appeals is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

Justice FRYE did not participate in the consideration or decision of this case.

Justice COPELAND dissents.