136 S.E.2d 265 (1964)
262 N.C. 25
NORTH CAROLINA STATE HIGHWAY COMMISSION, Petitioner,
v.
Jyles J. COGGINS and wife, et al., Respondents.
No. 459.
Supreme Court of North Carolina.
May 20, 1964.
Atty. Gen. T. W. Bruton, Asst. Atty. Gen. Harrison Lewis, and Trial Atty. Melvin, for petitioner.
Poyner, Geraghty, Hartsfield & Townsend, Raleigh, for respondents.
MOORE, Justice.
This is a proceeding to determine fair compensation for a tract of land appropriated *266 in fee by the North Carolina State Highway Commission, petitioner herein, for highway purposes. The date of taking was 8 February 1960. The land taken is generally triangular in shape, is situate at the southeast intersection of U. S. Highway 70 and Ridge Road (now generally referred to as the Raleigh Beltline), fronts 1371.65 feet on Highway 70 and 1060 feet on Ridge Road, and is a part of State Highway Project No. 8.14905, Wake County.
Petitioner and respondents were unable to agree upon the amount of compensation to be paid. This proceeding was instituted before the clerk of superior court and commissioners were appointed to appraise the land. On 26 April 1961 the clerk entered judgment confirming the commissioners' report awarding respondents $160,000 compensation. Petitioner excepted and appealed to superior court. Pursuant to the verdict of the jury, judgment was entered in superior court awarding respondents $84,000 compensation and $20,034 interest for the period from 8 February 1960, date of taking, to 9 January 1964, date of judgment. From this judgment respondents appeal.
Respondents assign as error the exclusion and admission of certain evidence and a portion of the judge's charge.
(1). Respondents offered the testimony of William R. Rand, expert real estate appraiser, concerning three sales transactions involving properties the witness regarded as comparable to a portion of the subject property. In the absence of the jury the judge heard detailed testimony of the witness with respect to the three properties and ruled that they were not comparable to the subject property. Thereafter, witness Rand, in the presence of the jury, was permitted to describe the three properties with regard to location, size, topography and condition at the time of the sales, but he was not allowed to give the sales prices in the hearing of the jury. Respondents contend that the three properties were comparable to subject property and the exclusion of evidence of the sales prices is error.
The subject land contains 18.46 acres. At the time of taking it was undeveloped cutover woodland and had a thin growth of scrub oaks and small pines. There were no buildings on it. It had a branch running through the southwest corner. It had a variation in altitude of about 75 feet from the low to the high point, a mean grade of about 5%. The witness characterized it as "gently sloping." The first 200 feet in depth on Highway 70 was zoned Residential 6 (6 families per acre), the remainder Residential 4 (4 families per acre). Water and sewer lines were not available. The witness was of the opinion that the highest and best use of Highway 70 frontage, to a depth of 400 feet, would have been "Office and Institutional," and of the remainder of the property, "Group Housing" (residential 10), that rezoning upon request was a reasonable probability.
The three sales of supposedly comparable property were made to Northwestern Mutual Insurance Company 11 March 1960, North Carolina Congress of Parents and Teachers, Inc., 29 April 1958, and Southern Bell Telephone and Telegraph Company 31 July 1961. These properties were on the same side of Highway 70 as subject property and closer to downtown Raleigh, they were 2540, 2840 and 2980 feet distant, respectively, from subject property, and contained 2.7, 1.39 and .529 acres in area, respectively. The sales prices were $50,000, $21,000 and $22,000 respectively. Water and sewer were available to them at the time of the sales. Between these properties and subject property the land was either vacant or residential on both sides of the highway. The three properties were level along the highway and sloped slightly upward to the rear. The Southern Bell lot required no rezoning for building a substation. The Northwestern Mutual lot had been rezoned "Office and Institutional." The P. T. A. lot had, upon request, been rezoned "Office and Institutional" at the time of sale.
*267 Whether property involved in a voluntary sale is sufficiently similar in nature, location and condition to the property appropriated by condemnation to admit evidence of its sale and the price paid therefor as a guide to the value of the condemned property is a question to be determined by the trial judge in the exercise of his sound discretion. North Carolina State Highway Commission v. Pearce, N.C., 136 S.E.2d 71; Barnes v. North Carolina State Highway Commission, 250 N.C. 378, 109 S.E.2d 219. In the Barnes case we stated:
"It is held in most jurisdictions that the price paid at voluntary sales of land similar to condemnee's land at or about the time of the taking is admissible as independent evidence of the value of the land taken. But the land must be similar to the land taken, else the evidence is not admissible on direct examination. Actually no two parcels of land are exactly alike. Only such parcels may be compared where the dissimilarities are reduced to a minimum and allowance is made for such dissimilarities. Nichols on Eminent Domain (3rd Edition), Vol. 4, section 12.311(3), pp. 55, 59; Belding v. Archer, 131 N.C. 287, 315, 42 S.E. 800.
"It is within the sound discretion of the trial judge to determine whether there is a sufficient similarity to render the evidence of the sale admissible. It is the better practice for the judge to hear evidence in the absence of the jury as a basis for determining admissibility. Annotation: 118 A.L.R. 904."
In our opinion there is enough evidence of dissimilarity between the subject property and the three tracts involved in the sales transactions to support the court's ruling that the prices paid for the three tracts are not admissible as a guide for establishing a fair compensation for the subject property. There were substantial dissimilarities in size, topography, location with respect to the developed business districts of Raleigh available services and zoning. A discretionary ruling of a trial court is conclusive on appeal in the absence of abuse or arbitrariness, or some imputed error of law or legal inference. 1 Strong: N.C. Index, Appeal and Error, s. 46, p. 131.
(2). Respondents Jyles J. Coggins and wife, Frances L. Coggins, purchased the subject property on 19 September 1958, less than a year and a half before the taking by petitioner on 8 February 1960. Mr. Coggins negotiated for purchase of the land with Mr. Arch T. Allen, agent for the then owners. Over the objection of the respondents, Mr. Allen was permitted to read into the record a letter from Mr. Coggins dated 22 August 1958 which contained an offer of $48,000 for the property, and was also allowed to read his reply dated 9 September 1958 containing an acceptance of the offer. The property was conveyed to Mr. Coggins and wife for the price of $48,000. Respondents moved to strike the testimony of witness Allen "on the ground that it has (sic) not been established whether the conditions which would affect the sales price of the subject property were similar on the date of sale September 19, 1958, and the date of taking February 8, 1960."
"It is accepted law that, when land is taken in the exercise of eminent domain, it is competent, as evidence of market value, to show the price at which it was bought, if the sale was voluntary and not too remote in point of time." Palmer v. North Carolina State Highway Commission, 195 N.C. 1, 141 S.E. 338. When land is taken by condemnation evidence of its value within a reasonable time before the taking is competent on the question of its value at the time of the taking. But such evidence must relate to its value sufficiently near the time of taking as to have a reasonable tendency to show its value at the time of its taking. The reasonableness of the time is dependent upon the nature of the property, its location, and the surrounding circumstances, the criterion being whether the evidence fairly points to the value of the property *268 at the time in question. State Highway & Public Works Commission v. Hartley, 218 N.C. 438, 11 S.E.2d 314. Evidence of the price paid by the owner was held incompetent in Redevelopment Commission, etc. v. Hinkle, 260 N.C. 423, 132 S.E.2d 761, where it appeared that approximately ten years had elapsed between the purchase and the taking and there had been enlargements and additions to buildings.
In the instant case the evidence tends to show that the sale to respondents Coggins covered the exact property taken by petitioner, the sale was voluntary and occurred less than a year and a half before the taking, there was no change in the condition of the property from the time of the sale to the time of the taking except that possibly some timber had been cut and removed.
Respondents contend that several significant changes in conditions occurred in the area that affected the value of the subject property. These changes are listed in respondents' brief as (1) nearby Brewer property zoned for shopping center on 17 February 1958, (2) P.T.A. property sold on 29 April 1958, (3) P.T.A. property rezoned "Office and Institutional" 20 May 1958, and (4) Lyon Equipment Company (property adjoining subject property) application for rezoning to "Office and Institutional" at public hearing.
The first three alleged changes in condition are irrelevant because they occurred before the subject property was purchased by respondents. It is a fair assumption that these changes influenced respondents to some extent in deciding to purchase the property at the price of $48,000. The last so-called change in condition was the application by Lyon Equipment Company for rezoning at a meeting of the City Planning Commission on 21 December 1959. It was referred for further study. The application was not granted until 15 February 1960, after subject property had been taken by petitioner. In our opinion the changes listed by respondents were not of sufficient substance and effect to render the purchase price paid by respondents inadmissible. The court did not err in overruling respondents' objections and motion to strike. After all, the jury awarded respondents almost double the amount they had paid for the land.
(3). Respondents contend that the following portion of the judge's charge is erroneous:
"The Court instructs you that when land is taken in the exercise of eminent domain it is competent as evidence of market value for you to consider the price at which it was bought if the sale was voluntary and not too remote in time. It is in evidence, and it has been stipulated, that the land was condemned on February 8, 1960, and that it was purchased a year and five months previous to that. If you should find from the evidence that this sale was made by sellers willing but not obliged to sell, to a buyer willing but not obligated to buy and that all parties being reasonably competent to deal in such a matter, then, as of September 19, 1958, you would have evidence which would support but not compel a finding that the purchase price paid on that date was the fair market value of the property as of that date, and you would be permitted to consider $48,000 as of September 19, 1958, as a fair market price on that date, the proximity of this date, that is, the date of September 19, 1958, to February 8, 1960, unless you should find some condition or circumstances had come about to materially influence the price between September 19, 1958 and February 8, 1960, and to the extent such condition or circumstances influenced the price would be the measure you would give, that is, either no consideration or substantial consideration, depending upon what conditions you found had influenced the price."
*269 Respondents challenge the instruction on two grounds. First, they insist that the court did not make it clear that the changes of condition which would affect value relate not only to changes in the physical condition of the subject property but also to changes in the area generally. Second, they contend there was evidence that the former owners had offered the property for sale at the price of $48,000 as early as 1954 and had kept the offer open and sold at that price in September 1958, that the judge in charging the jury referred only to the date of actual sale and erroneously failed to instruct the jury that it should consider the effect of any changes in conditions which took place between 1954 and the date of taking.
The contentions are without merit. The instruction does not limit the jury, in considering changes affecting value, to the effect only of physical changes in the subject property. Respondents suggest that the jury was given the impression that the matter was so limited in comments by the judge in the course of the trial, and therefore it should have been fully and specifically clarified in the charge. A careful examination of the record does not disclose any comment by the judge which would have left the impression suggested. Respondents' attorney, addressing the judge in the presence of the jury, objected to the testimony of Mr. Allen with respect to the letters and the price paid by respondents Coggins, and said, "I make the further point that what changes have been made in the market itself in that area would affect sales price * * * it is not merely a question of what was done with or on the land." Counsel for petitioner interposed, "I do not feel that we are called upon to show any change with respect to economic conditions." The judge answered, "But any change that is favorable or adverse that would affect it substantially would be competent at this time, whichever way it affected it." (Emphasis ours) This is the only comment we find bearing upon the question. It cannot be interpreted as imposing the limitation suggested.
According to the evidence subject property was optioned to one Richards in August 1954 at the price of $48,000 and the time for exercise of the option was once extended, but the option was not exercised. Mr. Allen had conversations with Mr. Coggins concerning the property "from time to time over a period of years" before the sale was made in September 1958. It is not the offering of property at a given price that furnishes evidence of market value; it is the actual sale by "a seller willing but not obliged to sell, to a buyer willing but not obligated to buy." An owner may and frequently does place a higher price on his property than it will bring in the market. It is not until a voluntary buyer is willing to take the property at the stated price that the transaction becomes an indication of market value. The court correctly referred to the date of sale rather than the date the property was first offered at the price in question.
No error.