COLONIAL PIPELINE COMPANY v. H. MICHAEL WEAVER AND WIFE, SONJA R. WEAVER

No. 8218SC87

(Filed 15 March 1983)

1. **Eminent Domain § 6.9— purchase price of property eight years earlier—incompetency to show value at time of taking—competency for impeachment**

In an action to condemn a permanent right-of-way easement for a petroleum pipeline, cross-examination of the landowner as to the purchase price he had paid his former business partner for a one-half undivided interest in the property eight years prior to the taking upon dissolution of their development corporation was not competent for the purpose of determining the market value of the property at the time of the taking since (1) the transaction was not sufficiently voluntary to reflect the fair market value of the property at the time of the purchase and (2) the purchase price paid eight years earlier was too remote in time to point fairly to the value of the property at the time of the taking. However, such evidence was competent for purposes of impeachment to test the accuracy of the landowner's opinion as to the value of the property.

2. **Eminent Domain § 6.9— value witness—cross-examination as to knowledge of other easements on property—remark by trial judge**

In an action to condemn a permanent right-of-way easement for a petroleum pipeline, the trial court erred in refusing to permit petitioner to cross-examine respondent landowners' expert value witness concerning his knowledge of two prior easements on respondents' property which contained three pipelines since such evidence was relevant to impeach the credibility of the expert witness and his testimony regarding factors he considered in arriving at his valuation and to establish the market value of the property before the taking. Furthermore, such error was aggravated by the trial court's remark, before any objection had been made to such line of questioning, that "I don't believe that is relevant."

Judge ARNOLD dissents.

APPEAL by petitioner from *Wood, Judge.* Judgment entered 16 October 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 15 November 1982.

The petitioner, Colonial Pipeline Company filed a petition seeking the condemnation of a temporary and permanent right-of-way and easement for the installation of a petroleum pipeline, and for the appointment of commissioners of appraisal. The commissioners of appraisal assessed the damages to respondents H. Michael Weaver and Sonja R. Weaver's property as being in the amount of $51,245. Both parties excepted to the report of the com-

missioners. The report was confirmed by the Assistant Clerk of Superior Court. Both parties appealed the confirmation. In addition, respondents demanded a jury trial.

A trial was held on the sole issue of compensation. The respondents presented evidence that they owned a 348 acre tract of land northwest of Greensboro. The permanent right-of-way, which would have taken 3.615 acres, varied in width from 30 feet at the southern end to 50 feet at the northern end. The highest and best use of repondents' property was for residential use. The respondents' expert estimated the diminution in value to respondents' property due to the taking amounted to $175,000. Respondent H. Michael Weaver testified that he had been damaged in the amount of $200,000.

The petitioner's expert agreed that the highest and best use was residential. He estimated damages to be in the amount of $17,000.

The jury found that $80,000 was just compensation, and the court entered judgment ordering the payment of that sum to respondents as just compensation. The court denied the petitioner's motions to set aside the verdict as being excessive and against the greater weight of the evidence, and for a new trial. From the verdict and judgment entered thereon, petitioner appeals.

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Joseph W. Moss and Larry I. Moore, III, for petitioner appellant.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, by C. T. Leonard, Jr., James T. Williams, Jr. and S. Leigh Rodenbough, IV, for respondent appellee.*

JOHNSON, Judge.

This appeal arises out of a condemnation proceeding. The petitioner, Colonial Pipeline Company (Colonial) appeals the award of $80,000 damages to the respondents, H. Michael Weaver and Sonja R. Weaver. Colonial makes ten assignments of error and presents eight questions for review. The issues presented concern whether the court erred in its evidentiary rulings, in its supplemental charge, and in denying petitioner's motions to set aside the jury's verdict and for a new trial. Our review of the

assignments of error and record discloses a number of errors in the trial court's evidentiary rulings.

[1] Petitioner's first assignment of error relates to the trial court's exclusion of evidence of a previous purchase price respondent H. Michael Weaver paid for a one-half undivided interest in the subject property.

On direct examination Weaver testified that in his opinion the property over which the right-of-way had been condemned was worth $4,500,000 prior to the taking. Weaver testified further that he acquired a joint interest in the property with his business partner in 1962 and full interest in the property in September of 1971. On cross-examination, Mr. Weaver was questioned at length about his acquisition of the property across which the right-of-way had been condemned. Colonial's attorney then asked Mr. Weaver a series of questions regarding the purchase price Mr. Weaver had paid his former business partner for the one-half undivided interest in the subject property approximately eight years prior to the taking. When Colonial's attorney asked Mr. Weaver if he had not in fact paid his partner $160,000, the Weavers' attorney objected and moved to strike. The trial court sustained the objection and instructed the jury not to consider the question because the price "paid for this property in 1971 would not be relevant in this case."

Petitioner Colonial assigns error to the exclusion of evidence of the purchase price paid for the one-half undivided interest in the condemned property. Colonial argues that the excluded evidence would have furnished a fair criterion for determining the value at the time of taking. In addition, Colonial argues that it was entitled to inquire into this matter on cross-examination to test the accuracy of Mr. Weaver's opinion as to the value of the property.

It is well established that when land is taken in the exercise of eminent domain it is competent, as evidence of market value, to show the price at which it was bought if the sale was voluntary and not too remote in point of time. *Highway Commission v. Nuckles,* 271 N.C. 1, 155 S.E. 2d 772 (1967); *Palmer v. Highway Commission,*195 N.C. 1, 141 S.E. 338 (1928). The reasonableness of the interval of time that has passed is dependent upon the nature of the property, its location, and the surrounding cir-

cumstances, the criterion being whether the evidence fairly points to the value of the property at the time in question. *Id.; Highway Commission v. Coggins*, 262 N.C. 25, 136 S.E. 2d 265 (1964). Some of the circumstances to be considered are the changes, if any, which have occurred between the time of purchase by the condemnee and the time of taking by the State, including physical changes in the property taken, changes in its availability for valuable uses, and changes in the vicinity of the property which might have affected its value. *Board of Transportation v. Revis*, 40 N.C. App. 182, 252 S.E. 2d 262 (1979).

The record discloses that neither of the tests for admissibility of a previous purchase price as direct evidence — voluntariness or lack of remoteness in time of that purchase — has been met by Colonial in this case. The requirement of voluntariness in order to introduce evidence of the previous purchase price in a condemnation proceeding is designed to ensure that the price previously paid for condemned property represented the fair market value at the time of that purchase. *See State Highway Comm. v. Moore*, 3 N.C. App. 207, 164 S.E. 2d 385 (1968). Although Mr. Weaver, on cross-examination, responded affirmatively to the question whether he had paid "full price" in his 1971 purchase, the 1971 transaction involved the purchase of a one-half undivided interest in the subject property from Mr. Weaver's former business partner at a time when the Weavers already owned the other one-half undivided interest in the property.

On cross-examination Mr. Weaver was asked if he recalled how much he paid for the land. Weaver responded:

> You did ask me, and I don't remember. And, of course, I don't remember — I must have bought the land from him but we dissolved [the corporation], and I acquired his interest, basically a simultaneous transaction.

It may be inferred from the testimony of Mr. Weaver that the 1971 transaction between he and his partner, Mr. Taylor, arose out of the dissolution of their development corporation, which had originally held title to the subject property.

In *Redevelopment Comm. v. Panel Co.*, 273 N.C. 368, 159 S.E. 2d 861 (1968), the Supreme Court affirmed a trial court's exclusion of testimony concerning the price paid for an industrial site

"within sight of" the subject industrial property because the transaction did not reflect the fair market value of the property. The court pointed out that while the industrial site was "comparable" to the subject property, the transaction under consideration was one between two corporations that apparently included the sale of an entire business and involved some tax considerations. *Id.*, at 373-74, 159 S.E. 2d at 865. Thus, the Supreme Court has recognized that in certain circumstances the price paid in sales not on the open market cannot be admitted as evidence of the value of comparable properties.

While the exact nature of the transaction is unclear, the circumstances surrounding Mr. Weaver's purchase of the remaining one-half undivided interest in the subject property from his former business partner indicate that the 1971 transaction was not the type that would yield the same price as an entirely voluntary sale in an arm's length transaction on the open market.

The other factor to be considered in determining the competency of the price previously paid for property that is the subject of condemnation is the remoteness in time of that purchase. Among the circumstances to be considered are both physical changes in the property itself and changes in the vicinity of the property which might have affected its value. *Highway Commission v. Nuckles, supra; Board of Transportation v. Revis, supra.* Colonial concedes that there was testimony by the Weavers' expert that the property is located in an area northwest of Greensboro and that the northwest area is developing faster than other areas around Greensboro, but argues that this evidence fails to render the sale too remote in time because "there is no evidence of substantial changes in the nature of the property in the vicinity of the property subject to the taking." We do not agree.

The evidence presented by the Weavers was sufficient to demonstrate the remoteness in time of the previous sale with regard to changes in the vicinity of the property which might have affected its value, which is all that need be demonstrated under the test set forth in *Highway Commission v. Nuckles, supra* and *Board of Transportation v. Revis, supra.*

In *Redevelopment Commission v. Hinkle*, 260 N.C. 423, 132 S.E. 2d 761 (1963), the Supreme Court held that the price paid in

a voluntary purchase of the subject property, ten years prior to the time of taking was not admissible. In support of its decision, the court noted:

> No evidence was offered tending to show similarity of conditions at the different times. To the contrary, petitioner's evidence shows some enlargement and additions to the buildings made by defendants subsequent to their purchase.

*Id.* at 424-25, 132 S.E. 2d at 762.

As in *Hinkle*, the petitioner in the present case offered no evidence tending to show similarity of conditions in either the subject property or its vicinity between the time of the 1971 transaction and the time of the taking. To the contrary, there was sufficient evidence of record to demonstrate significant changes in the vicinity of the subject property during that period. In addition, respondent H. Michael Weaver testified that during his term of ownership he had made significant improvements to the property by thinning, treating and planting trees. Mr. Flynt, the Weavers' value witness testified that the fact that the property "was very heavily wooded with about eighty percent hardwood" figured prominently in his opinion of the value of the property for its highest and best use.

> "The fact that some changes have taken place does not *per se* render the evidence incompetent. But if the changes have been so extensive that the purchase price does not reasonably point to, or furnish a fair criterion for determining, value at the time of the taking, *when purchase price is considered with other evidence affecting value,* the evidence of purchase price should be excluded." (Emphasis added.)

*Highway Commission v. Nuckles, supra* at 18, 155 S.E. 2d at 786 quoting from *Shopping Center v. Highway Commission,* 265 N.C. 209, 212, 143 S.E. 2d 244, 246; *Board of Transportation v. Revis, supra* at 186, 252 S.E. 2d at 264. Taken as a whole, the evidence presented by the respondents shows that the purchase price paid by Mr. Weaver in 1971 was too remote in time to fairly point to the value of the property at the time of the taking. In addition, as we stated above, the transaction itself was not sufficiently voluntary to reflect the fair market value of the property in 1971. Accordingly, it was proper for the trial court to exclude evidence of

the price paid by the respondents in the 1971 transaction for purposes of determining the market value of the property.

However, the evidence was competent for purposes of impeachment to test the accuracy of Mr. Weaver's opinion as to the value of the property. *Palmer v. Highway Commission, supra.* In *Palmer,* the plaintiffs sought compensation primarily for the destruction of a store building upon their land. On cross-examination the plaintiff-witness admitted that the building had been upon the land when they bought it 18 years prior. The defendant asked the witness what the purchase price was for the entire property. The plaintiffs objected to the question and the objection was overruled. The Supreme Court affirmed admission of the purchase price evidence for purposes of impeachment even though it would have been incompetent on the issue of market value.

> Certainly the value of property eighteen years before the taking, nothing else appearing, would be incompetent, but upon the present record it appears that the plaintiff had testified that they had owned the property for eighteen years, and that the building was then upon the property. The plaintiffs had further testified that at the time of the taking the property was worth $3,000. It was therefore permissible on cross-examination to test the accuracy of the opinion of the witness as to the value of the property as well as to demonstrate the basis of his opinion as to the value thereof.

195 N.C. at 2, 141 S.E. at 339.

Here, respondent Weaver had testified on direct examination that he had, in effect, owned the property since 1962 and that in his opinion the property had a value of $4,500,000 prior to the taking in 1979. Petitioner was entitled to test the credibility of Mr. Weaver's opinion testimony regarding the property's value by inquiring into matters relevant to the accuracy of and basis for this opinion, such as the price Mr. Weaver himself paid for a one-half undivided interest in the property in 1971. The trial court's exclusion of the evidence of the previous purchase price for purposes of impeachment was error.

[2] By a related assignment of error, petitioner contends that its cross-examination of respondent's sole expert value witness, Mr.

Flynt, concerning his knowledge of previously existing rights-of-way, was prejudicially limited by the trial court.

The record shows that in 1963 and 1964 three pipelines were constructed in two rights-of-way in respondents' property which were roughly parallel and in the same area as the subject right-of-way. The respondents offered the testimony of only one independent expert value witness, Mr. Flynt. On cross-examination Mr. Flynt admitted that he was not completely aware of all the rights that were granted under the earlier rights-of-way, but said that he had "a pretty general feeling for what was contained in those documents" and that "those were certainly taken into consideration." Mr. Flynt had also testified at length concerning the effect of the petitioner's removal of 458 trees for the temporary work space and of the need to create a "buffer zone" between the right-of-way and the remainder of respondents' property.

The testimony forming the basis of petitioner's assignment of error is as follows:

Q. Do you know the width of the Colonial Pipeline right-of-way that was in existence there prior to February 21, 1979?

A. It is approximately fifty feet.

Q. Approximately? You don't know the dimensions of the right-of-way?

THE COURT: Are you talking about Colonial?

MR. MOSS: The original Colonial, the 1963 Colonial right-of-way that was in existence at the time he made his appraisal.

THE COURT: I don't believe that is relevant.

Q. Did you know or did you note at that time the width of the Plantation Pipeline right-of-way across the property?

A. Approximately.

Q. You don't know exactly?

A. Fifty feet, give or take five feet. It has the same effect on the property.

Q. Do you know whether or not Colonial Pipeline Company and/or Plantation Pipeline Company acquired a temporary

working easement at the time they acquired their rights to the pipeline rights-of-way which were in existence for 1963 and 1964?

MR. WILLIAMS: Objection, your Honor.

THE COURT: Sustained.

The sole issue for the jury in this case was the determination of what sum was just compensation for the appropriation of an easement and right-of-way in the respondents' property, based upon the before-and-after market values of the property. It is necessary, therefore, for the jury to understand both the degree of limitation of the landowners' use of their property after the taking and any limitation of the landowners' use of their property before the taking which would tend to affect its market value. Mr. Flynt had admittedly considered the previously-existing rights-of-way in making his appraisal of the property's market value prior to the taking. Consequently, his knowledge or lack of knowledge concerning the before-and-after limitations of the respondents' use of the property engendered by those rights-of-way was a proper area for cross-examination.

One of the three general purposes cross-examination may serve is to impeach the witness, or cast doubt upon his credibility. Brandis on North Carolina Evidence § 38 (Rev. Ed. 1982). The trial court erred by denying petitioners the opportunity to test the knowledge of respondents' only independent value witness concerning a previously-existing limitation upon the use of the land which he admittedly had considered, and thus attempt to cast doubt upon his credibility. The largest possible scope should be given in cross-examination and almost any question may be put to test the value of a witness' testimony. Brandis on North Carolina Evidence, *supra,* § 42.

The limitation of the scope of cross-examination of Mr. Flynt was aggravated by the trial court's interruption, before any objection had been made, of the line of questioning concerning the witness' lack of detailed knowledge of the previously existing rights-of-way and the trial court's spontaneous remark, "I don't believe that is relevant."

In *Kanoy v. Hinshaw,* 273 N.C. 418, 426, 160 S.E. 2d 296, 302 (1968) the Supreme Court stated:

> It is well recognized in this jurisdiction that a litigant has a right by law to have his cause tried before an impartial judge without any expressions from the trial judge which would intimate an opinion by him as to weight, importance or effect of the evidence . . . However, this prohibition applies only to an expression of opinion related to facts which are pertinent to the issues to be decided by the jury, and it is incumbent upon the appellant to show that the expression of opinion was prejudicial to him. (Citations omitted.)

The trial court's remark, "I don't believe that is relevant" goes beyond mere *intimation* of an opinion, it is a *direct expression* of opinion by him as to the weight and importance of the evidence. The pertinency of the facts to which the opinion relates is also clear. The petitioner's line of questioning was not only relevant for the purpose of impeaching the credibility of the expert witness and his testimony regarding factors he considered in arriving at his valuation, but it was also relevant to establish the market value of the property before the subject taking.

In *Barnes v. Highway Commission*, 250 N.C. 378, 387-88, 109 S.E. 2d 219, 227 (1959) the Supreme Court stated:

> "In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted—that is to say, what is it worth from its availability for valuable uses?" *Power Co. v. Power Co.*, 186 N.C. 179, 183-4, 119 S.E. 213, quoting from *Boom Co. v. Patterson*, 98 U.S. 403. The jury should take into consideration, in arriving at the fair market value of the land taken, all the capabilities of the property, and all the uses to which it could have been applied or for which it was adapted, which affected its value in the market at the time of the taking and not merely the condition it was in and the use to which it was then applied by the owner.

As the purpose of the trial was to determine the amount of reduction in the fair market value of the repondents' property by the taking of the most recent easement, it follows that the nature of

two prior easements containing three pipelines is important in determining the market value of the property before the subject taking.

The criterion for determining whether the trial judge deprived a litigant of his right to a fair trial by improper comments or remarks in the hearing of the jury is the probable effect upon the jury. *Worrell v. Credit Union,* 12 N.C. App. 275, 182 S.E. 2d 874 (1971). Any remark of the presiding judge, made in the presence of the jury, which has a tendency to prejudice the jury against the unsuccessful party is ground for a new trial. *Homes, Inc. v. Holt,* 266 N.C. 467, 146 S.E. 2d 434 (1966).

The trial court's remark, which was to the effect that the extent of the previously-granted easements were not relevant to the issue of how much compensation should be awarded to the respondents for the new easement has a clear tendency to prejudice the jury against Colonial's position at trial. The trial court's improper comment upon the weight and importance of the line of questioning petitioner was pursuing thus compounded the court's erroneous limitation of the scope of petitioner's cross-examination of Mr. Flynt. These errors, taken together with the erroneous exclusion of the previous purchase price during cross-examination of Mr. Weaver, were clearly prejudicial and entitle the petitioner to a new trial. In view of our disposition of the case, we will not review petitioner's other assignments of error as they may not recur upon retrial.

New trial.

Judge HILL concurs.

Judge ARNOLD dissents.